FRANK COLLINS ET AL. v. CRAIG SHIPBUILDING CO. ET AL.

1. LANING R. L. 10025 (R. S. 6448) ONLY APPLICABLE WHERE RAILROAD OCCUPIES LAND WITHOUT WRITTEN AUTHORITY.

A railroad company which is occupying land under claim of a written contract executed by the owner cannot be compelled, under Lan. R. L. 10025 (R. S. 6448), to resort to appropriation proceedings to appropriate the land, as such statute only applies where the occupation is without any agreement in writing with the owner.

2. USURPING RIGHTS DENIED BY WRITTEN AGREEMENT DOES NOT BRING CASE WITHIN LAN. R. L. 10025 (R. S. 6448).

A railroad company cannot be said to be occupying the lands of another under an agreement which is not in writing within the meaning of Lan. R. L. 10025 (R. S. 6448), by reason of the fact that it is usurping certain rights prohibited by the written agreement under which it originally entered.

3. RIGHT OF RAILROAD UNDER CONTRACT NOT GREATER THAN THAT OF ITS ASSIGNOR.

Where the right was granted in writing to an individual to lay a spur track upon the lands of the owner for the purpose of connecting with the tracks of a railroad company, upon the condition and limitation that such track should not be used except for the business of the grantee's company, the right of a railroad company, to whom the grant was assigned by the grantee, can rise no higher under the grant than the right of such grantee.

4. RAILROAD COMPANY MAY BE ENJOINED FROM CONTINUING POSSESSION OF LAND.

A railroad company which has taken possession of private property without the consent of the owner and without first making compensation therefor in appropriation proceedings, may be enjoined from continuing its possession and use of such property.

5. WHAT NO DEFENSE IN ACTION TO ENJOIN RAILROAD FROM OCCUPYING LAND.

It is no defense to an action to enjoin a railroad company from unlawfully continuing its possession and use of private property, that the owner might tender a deed to, and demand compensation from, the company for the land in question.

**E. D. Potter, Ralph Emery** and **B. F. Brough,** for plaintiffs.

**Seiders & Monnette,** for defendants, cited:

*Lake Erie & W. Ry.* v. *Hancock Co. (Comrs.)* 63 Ohio St. 23, 30 [57 N. E. Rep. 1009]; *Fries* v. *Railway,* 56 Ohio St. 135 [46 N. E. Rep. 516]; *Lawrence Ry.* v. *Williams,* 35 Ohio St. 168; *Railway* v. *O'Harra,* 48 Ohio St. 343 [28 N. E. Rep. 175]; *Kramer* v. *Railway,* 53 Ohio St. 436 [42 N. E. Rep. 252]; *Atlantic & G. W. Ry.* v. *Robbins,* 35 Ohio St. 531.

Collins v. Shipbuilding Co.

**HULL, J.**

This is an action brought by the plaintiffs, Frank Collins and the Northwestern Realty Company, who are the successors in title of William A. Collins, to enjoin the defendants, The Craig Shipbuilding Company, The Toledo Belt Railway Company and The Wheeling & Lake Erie Railway Company, and especially the two railroad companies, from the use that they were making of a certain spur or side track running from the Wheeling & Lake Erie railroad tracks down to the lot or land of the Craig Shipbuilding Company, the plaintiffs claiming that such use was in violation of certain conditions and limitations contained in the grant by which the right to lay the track was conferred upon the predecessor of the Craig Shipbuilding Company, to wit, John Craig, from whom the company has acquired this title. The action came on for hearing before us upon a motion for judgment in favor of the plaintiffs upon the pleadings.

It appears from the evidence that in 1886 William A. Collins and Louis Paine were the owners of certain lands lying between the Craig shipbuilding lots and the Wheeling & Lake Erie railroad lots and that they granted to John Craig, who was then the owner of the Craig Shipbuilding Company lots, the right to lay this track to the Wheeling & Lake Erie tracks, by a written grant, and among the conditions and limitations in said grant it was provided that the track should not be used except for the business of the Craig Shipbuilding Company and their purposes or for industries located upon the Craig Shipbuilding Company lot, and the tracks were laid under this grant.

Some years afterward another side track or spur of the Wheeling & Lake Erie Company was built easterly to connect with another track running down to the Wheeling & Lake Erie track and thus connecting with several industries lying east of the Craig shipbuilding lot, the connecting road being known as the Maumee Connecting Company, and the products of these other industries lying east of the Craig shipbuilding lot were transferred on this connecting line to the Craig shipbuilding track, across that and up to the Wheeling road, upon this track in question, thus increasing very largely the transactions upon this track, the right to lay which had been granted to Mr. Craig and in the respect that the traffic was increased and the number of cars largely increased in this manner the conditions of the grant which limited the use to the Craig Shipbuilding Company and the industries thereon, were violated and this action was brought by the plaintiffs as the successors of William A. Collins and Paine, to enjoin the Wheeling & Lake Erie Railroad Company and the other roads from violating those provisions

of the grant and to require them to comply with all the provisions of the grant in respect to transportation, etc.

The claim of the railroad companies as set forth in their answer and as argued before us, in brief, is, that the plaintiffs have an adequate remedy at law and therefore there should not be a remedy by injunction. It is said that they have two remedies; that they may tender a deed to this right of way to the Wheeling & Lake Erie and demand compensation, and if not paid, interfere with its use of the track; or, they may compel an appropriation of that part of the railroad under Lan. R. L. 10025 (R. S. 6448), and that therefore they should not be granted an injunction.

A very large number of authorities were cited by counsel on both sides. We shall not undertake to mention or to review many of them. Now it appears that this condition was contained in this grant; that it is being violated and has been violated for some years, and that this violation will impose an additional burden upon this land, in that a great many more cars, several times as many perhaps, will be run across the property, than passed over it at the inception of the grant.

The grant was made in writing. Laning R. L. 10025 (R. S. 6448) applies in its express language only to cases where corporations authorized to appropriate are in possession of property without any agreement in writing with the owner thereof, and it provides in that event the owner may serve notice in writing upon the corporation, in the manner providing for service of summons against a corporation, etc., and proceed under the chapter to appropriate the lands, and on their failure to do so, the statute provides what may be done. Now it is said that while this original grant was in writing, the writing only conferred certain privileges upon John Craig, and if it was undertaken to go beyond that, it could not be said that the railroad company were in possession by virtue of the writing, and therefore the owners would come within the provisions of this statute.

It seems to us this is tenable. The original entry here was a written grant. The position of the plaintiffs is, that should they undertake to avail themselves of this statute, they would be met by the proposition of the railroad company that they were in possession under a writing and that therefore their possession could not be both—and we think this is correct. The original possession was in writing; they have a right of possession with certain limitations and conditions, but possession for the laying of this track and for the occupancy of this land twenty feet in width was granted to Mr. Craig in writing, and this statute provides that it shall only apply to cases where the possession

Collins v. Shipbuilding Co.

is not held by any agreement in writing. It cannot be said here that the possession is not in writing because the railroad company is now insisting upon certain rights which were not given by that writing; the contract cannot be wiped out and abrogated by an attempt on the part of the railroad company to go beyond the stipulations of the written agreement, so that it seems to us that it cannot be said that the plaintiffs here might avail themselves of these provisions.

There is another reason why they are not required to do this. The grant was originally made to a private individual, Mr. Craig, who had no power to appropriate or condemn land, and he afterwards assigned it to a railroad company, which has the power of appropriation, but by this assignment to the company they could not acquire any greater rights under the contract than he had; they had no more right, as it seems to us,—it being assigned to them under these circumstances,—to compel the owners of this land to require an appropriation than Mr. Craig would have had. Of course the railroad company has a right to condemn this property for all purposes; under their right of eminent domain they may do that at any time, but it seems to us that the possession not having been taken by them originally, but having been granted to a private individual without this power of appropriation and this right of eminent domain, that their right so far as this man is concerned, can rise no higher than his and that the owners of this land are entitled to hold their rights as against the railroad company the same as they would if this grant were still held by Mr. Craig.

If the railroad company desires to have full and complete use of this right of way and of these tracks, they have a right under the law to appropriate and condemn. By running this increased number of cars over these tracks they are simply taking the private property of the owners of this land across which the track lies and imposing an additional servitude upon it. The right to use the land is the right not to have any additional burdens imposed upon it beyond the burden stipulated for in the original grant; is a right of property upon their part; a right of private property in which they are protected by the constitution and which cannot be taken from them until just compensation shall have been made to them in money.

It has been held many times that a corporation may be enjoined from taking private property for public purposes without first making compensation for it, and that seems to be what is attempted to be done here. The railroad company has not the right, in our judgment, to compel the landowners to resort to the provisions of this statute, even if they were within it; they must stand upon their contract—the grant

has been made that certain cars may be run across these tracks. They are satisfied with their contract; they do not desire to have their entire property taken away from them for that purpose but they stand upon their contract which they have made and in our judgment they cannot be compelled to abandon the contract in any event and ask the court to require the railroad company to take their entire property rights.

It is claimed further that the landowners might tender a deed and demand compensation for their land. But they do not desire to do this and we do not think the case is one where that could be done properly. The case cited upon this proposition is that of *Fries* v. *Railway,* 56 Ohio St. 135 [46 N. E. Rep. 516]. That was a case where the railroad company entered into possession, as appears from the syllabus, under the verbal consent of the owner and a verbal promise was made that they would compensate him for his land, which they afterwards refused to do and without appropriation proceedings or any agreement in writing they continued to hold the land. The court say:

"Such owner has an election of remedies, either (1) to proceed in the probate court to compel appropriation under Sec. [Lan. 10025] 6448 Rev. Stat.; or (2) by assenting to such possession by the company as an appropriation in fact, and tendering conveyance, to proceed in the court of common pleas to recover compensation."

Now here was a case where the railroad company had possession without any contract, agreement or grant such as there is here, without any limitation even, and took absolute possession of the property under a promise to pay him for the whole property and under no limitation that it should only be used for a certain purpose; they had taken possession with the intention to take full possession and control of the premises and to pay him for it, and afterwards refused to do it, and the court held that he might treat that as an appropriation and, if they so desired, to tender a deed and demand compensation for the land. But that is not this case, where a grant has been made providing for a certain limitation under which a track can be used and the amount of business that shall be sent over the tracks.

As I say, a great many cases have been cited: *Stines* v. *Dorman,* 25 Ohio St. 580, is in point on the general power to grant an injunction under a case not exactly similar to this, but involving the same questions. Also *Lawrence Ry.* v. *Williams,* 35 Ohio St. 168; *Wagner* v. *Railway,* 38 Ohio St. 32; *Balt. & O. Ry.* v. *West,* 57 Ohio St. 161; *Niles* v. *Cedar Point Club,* 13 O. F. D. 281 [175 U. S. 300; 20 Supt. Ct. Rep. 124; 44 L. Ed. 171]; *Railway* v. *O'Harra,* 48 Ohio St. 343 [28 N. E. Rep. 175], and many others have been cited which I will not

Collins v. Shipbuilding Co.

mention here. None of them cover a case just exactly like this one but the principles in regard to such action are laid down in them.

The conclusion of the court is, that these parties have a right to have this contract enforced and carried out; that the railroad company is performing repeated acts of trespass upon their land; and, further, that they are taking or threatening to take the property of these land-owners without compensation in thus increasing the number of cars that they are sending and propose to send over these lines; and under the principles of law and equity, as we understand them, they are entitled to an injunction to prevent this until they have been paid for the property, and that they are entitled to stand upon their contract and have it enforced.

The judgment, therefore, will be the same as that of the court below—in favor of the plaintiff and enjoining the defendant from violating this provision of its grant.

**Haynes** and **Parker, JJ.,** concur